SARAH LOVERAGE v. G. W. CARMICHAEL.[1]

July 3, 1925.

No. 24,570.

**In action for death by wrongful act no prejudicial error in charge or refusal to charge.**

Action to recover for death by wrongful act. *Held*, that there was no prejudicial error in the charge to the jury as given, nor in refusing to charge as requested by plaintiff, nor in a failure to charge in certain respects.

See Motor Vehicles, 28 Cyc. p. 49.

Action in the district court for Hennepin county to recover for the death of plaintiff's intestate. The case was tried before Leary, J., and a jury which returned a verdict in favor of defendant. Plaintiff appealed from the judgment. Affirmed.

*Mead & Bryngelson*, for appellant.

*Cobb, Wheelwright, Hoke & Benson*, for respondent.

QUINN, J.

Action to recover for the wrongful death of John A. Loverage, alleged to have been caused by the negligence of the defendant in driving his automobile against the deceased, on the morning of October 16, 1922, at the intersection of Thirty-sixth street and Nicollet avenue, in the city of Minneapolis. There was a verdict in favor of the defendant. Plaintiff moved for a new trial, which was denied. From a judgment entered upon the verdict, this appeal was taken.

[1]Reported in 204 N. W. 921.

At the point in question, Nicollet avenue extends north and south, Thirty-sixth street crosses it at right angles, and Blaisdell avenue is one block west, paralleling Nicollet. There is a tea house on the east side of Nicollet, about 50 feet north of the intersection, and a barber-shop immediately across Nicollet from the tea house. There is a street car track along the center of Nicollet, and a regular stopping place for street cars just north of the intersection. The morning in question was wet and rainy. It was misting at the time of the accident.

It is undisputed that an accident happened between defendant's automobile, which he was driving, and the deceased, at the time and just north of the intersection mentioned, and that, as a result, deceased received injuries from which he died 25 days later. This action was brought, by the administratrix of his estate, in behalf of the surviving spouse and next of kin. There was a conflict in the testimony as to how the accident happened. Immediately prior to the accident, deceased was seen, as some of the witnesses testified, coming from the corner of Thirty-sixth street and Blaisdell, along the walk on the south side of Thirty-sixth street; that he crossed Nicollet to the southeast corner of the intersection, then turned and walked north across Thirty-sixth street to the northeast corner of the intersection, where the street car going north usually stopped; that he carried an umbrella over his head; that he stopped near the edge of the sidewalk, some 3 or 4 feet from the curb on Nicollet avenue, apparently for the purpose of getting onto the street car which was then approaching from the south; that the defendant's automobile, at that time, came along Nicollet avenue from the south and started to pass the street car, as the front end of the latter was entering upon the intersection, striking the deceased as he stood near the curb, dragging him nearly 50 feet north, to a point near the tea house, causing the injuries which resulted in his death on November 10.

Other witnesses testified, in effect, that they saw deceased just before the accident; that he stood near the curb, with an umbrella down over his head so that he would not be able to see a car coming

and, as the automobile was passing the street car, he was struck by the auto as the front end of the street car was passing where he stood. There was testimony to the effect that, when the rear end of the street car was about even with the south cross-walk, at the intersection, the defendant's automobile was going by the gates at the rate of about 30 miles per hour. The street car was going about 25 miles per hour and, when within about 50 feet of the intersection, began to slow down for the stop on the north side and, when the front end was about in the middle of the intersection, as the motorman testified, it was going about 7 miles per hour; that he saw deceased as he reached the curb; that the deceased then turned and walked into the street, to within 6 or 7 feet of the car tracks; that the front end of the street car was about 4 feet south of him when the automobile struck him. It is undisputed that, when deceased was struck by the automobile, his umbrella flew into the air.

Plaintiff alleges 14 assignments of error in her brief, all relating to the charge, the failure to charge, or refusal to charge the jury as requested. It is claimed, on behalf of appellant, that the defendant was guilty of negligence as follows: Excessive speed, failure to sound horn, failure to exercise a proper lookout, violation of the city ordinance, lack of control, and failure to equip car with chains and windshield wiper. The defendant denies that he was negligent in any of the particulars mentioned, or at all, and alleges contributory negligence on the part of the deceased.

The defendant testified as a witness at the trial, to the effect that, at the time of the accident, he was 32 years of age; that he was a machinist by trade; that he was driving his Elgin sedan car, on his way to his place of business; that he was experienced in automobile driving; that, on the morning of the accident, he was driving north on Nicollet, back of the street car; that he was going possibly 20 to 25 miles per hour; that he threw the clutch of his car out and coasted past the street car, when it was in the intersection; that he did not pass the street car until after he had hit the deceased; that, when he got alongside of the street car, he did not see anyone in

the way; that there was no one on the street waiting, then all of a sudden there was an umbrella right in front of him, and he put his hand on the horn, gave it a toot, reached for the emergency brake, let his clutch out, and killed the engine; that he was going under 15 miles per hour; that he could not have stopped in any shorter distance, even if going 5 miles an hour; that he did not see anyone in front of his car until within 5 or 6 feet of the umbrella; that the umbrella was pointed toward him, toward his car, just held low, coming toward him; that he could see through his windshield all right; that he did not have chains on his car; that there had been no rain for several weeks previous and, at the time, there was a scum on the paving making it slimy, and that he could stop as quickly on that type of paving without chains as with chains.

Under the testimony, it is perfectly clear that the question of negligence on the part of defendant, and of contributory negligence on the part of the deceased, was for the jury to determine from the proofs in the case, under proper instructions. We are satisfied that the issues were all clearly defined and placed before the jury in such a manner as to afford a clear understanding of the rules of law applicable thereto, nor do we discover any fault with rules of law applicable to the case, as given by the learned trial judge.

Appellant's first four assignments have to do with the question whether appellant was entitled to an instruction that a violation of a positive law constitutes negligence. In this connection, a complete answer to the contention is that the court did so instruct the jury, in the following language, with which we have no fault:

"They both had a right to make use of the streets, and this ordinance is passed for the protection of those who make use of the streets, and where a law is passed for the protection of certain individuals and where there is a breach of that law or that ordinance, and it is the direct and proximate cause of injury to another party, and if that party is without contributory negligence, then it becomes negligence per se—that is liability fixes as against the party who causes the injury."

We find no merit in appellant's fifth assignment of error. It has to do with the instruction as to contributory negligence on the part of the deceased. The court said to the jury that "Negligence, generally speaking, means failure to exercise reasonable care, and reasonable care is that degree of care which an ordinarily careful or prudent person would exercise under like or similar circumstances. * * * I have also called your attention that the defendant claims that the deceased was guilty of contributory negligence in the way he made use of the street at this particular time. They claim coming out upon the street as he did, with an umbrella over his head, he did not view the street and did not exercise that degree of care which an ordinarily careful and prudent person would under like or similar circumstances. Now contributory negligence is negligence as I have defined it to you, of which the deceased may or may not have been guilty. It is for you to say. The claim of the plaintiff is that the deceased was not guilty of contributory negligence in any sense of the word."

The court further said to the jury: "If * * * you find there was such negligence on the part of the defendant in the operation of his car, then take up the next question, which is contributory negligence. Was the deceased guilty of contributory negligence? And with reference to this, the burden of proof rests upon the defendant, and the defendant in order to establish contributory negligence must prove it by a fair preponderance of the evidence. It is not presumed on the part of the deceased—as a matter of fact, the presumption is rather the other way, because the burden of proof is upon the defendant to establish by a fair preponderance of the evidence, that the deceased was guilty of contributory negligence—in order to constitute a defense in this lawsuit." There is no conflict in the evidence as to the presence of the umbrella at the time of the accident. Plaintiff's witness, the conductor of the street car, testified to seeing it fly into the air when the accident occurred. The instruction was as favorable to the plaintiff's cause as she had any right to ask.

At the trial, plaintiff offered in evidence a certain city ordinance having reference to the speed and control of an automobile driven upon the streets, and also laid stress upon the statute in relation thereof, as well as the failure of the defendant to have chains upon his car and also a windshield wiper. No good would come from traversing the instructions bearing upon this phase of the case further than to say that we have considered the charge as a whole and deem it full and complete with reference to all such matters, and find no error therein requiring an interference with the disposition of the case made by the learned trial judge.

Affirmed.